IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

JENNIFER HATCH and                )
CHRISTOPHER HENNING,               )
                                   )
            Plaintiffs,            )
                                   )
v.                                 )        Case No. CIV-19-471-D
                                   )
STATE FARM FIRE AND                )
CASUALTY COMPANY,                  )
                                   )
            Defendant.             )

# O R D E R

Before the Court is Defendant State Farm Fire and Casualty Company's Motion for

Summary Judgment [Doc. No. 21], filed pursuant to Fed. R. Civ. P. 56.   Defendant seeks

a judgment in its favor on all claims asserted by Plaintiffs Jennifer Hatch ("Hatch") and

Christopher Henning ("Henning").   Plaintiffs have responded [Doc. No. 26] in opposition

to the Motion, and Defendant has replied [Doc. No. 27].   Thus, the Motion is fully briefed

and ripe for decision.

Plaintiffs bring this diversity action to recover damages for breach of contract,

breach of an insurer's duty of good faith and fair dealing, fraud, and negligence related to

a claim for underinsured motorist ("UM") coverage under an automobile insurance policy

issued by Defendant.   *See* Compl. [Doc. No. 1], ¶¶ 18-20, 25-28.   Specifically, Plaintiffs

allege that they sustained damages from an automobile accident in excess of the liability

coverage of the negligent driver, that they were entitled to recovery under the UM

endorsement of the policy, but that Defendant failed to pay all benefits owed.   *Id*. ¶¶ 11,

15-17.   They also claim that Defendant initially denied coverage based on a false UM rejection form bearing a forged signature of Henning, and that Defendant knew of the forgery when it denied Plaintiffs' insurance claim.   *Id.* ¶¶ 21-24.   Defendant seeks summary judgment based on Plaintiffs' alleged inability to show: 1) a breach of the policy; 2) bad faith conduct; and 3) an essential element of fraud, namely, detrimental reliance on any misrepresentation regarding the UM rejection form.

Defendant also asserts that Oklahoma law does not recognize a claim of negligence against an insurer, as asserted in the Complaint.   *See id.* ¶ 20.   Defendant argues that the Oklahoma Supreme Court made clear in *Badillo v. Mid Century Insurance Co*., 121 P.2d 1080 (Okla. 2005), that an insurer cannot be held liable for mere negligence in its handling of an insurance claim.   *See id*. at 1094 ("minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence").   Plaintiffs make no response to this argument; they provide no legal authority to support a negligence claim. Therefore, the Court finds that Defendant is entitled to judgment as a matter of law on Plaintiffs' negligence claim, and addresses only Plaintiffs' remaining theories of liability.

### Standard of Decision

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A material fact is one that "might affect the outcome of the suit under the governing law."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party.   *Id*. at 255.   All facts and reasonable inferences must be viewed in the light

most favorable to the nonmovant.   *Id*.   If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim or defense, all other factual issues concerning the claim or defense become immaterial.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment.   *Id*. at 322-23.   If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial.   *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).   "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A).   "The court need consider only the cited materials, but may consider other materials in the record."   *See* Fed. R. Civ. P. 56(c)(3).   The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."   *Anderson*, 477 U.S. at 251-52.

### Statement of Undisputed Facts[1]

On February 6, 2014, Hatch was injured in a motor vehicle accident while driving an automobile insured by Defendant under a policy issued to Henning.   The accident was

---

[1]   This statement includes material facts that are supported by the record and not opposed in the manner required by Rule 56(c)(1) and LCvR56.1(d).   All facts properly presented by a party and not specifically controverted by an opponent are deemed admitted, pursuant to Rule 56(e)(2) and LCvR56.1(e).

caused by another driver, Jim Preslar ("Preslar"), who was also insured under a policy issued by Defendant; the policy had a liability coverage limit of $25,000.   Hatch submitted an insurance claim to Defendant for injuries to her neck and back suffered in the accident.

Henning was not involved in the February 2014 accident and did not suffer any bodily injuries as a result.   Henning did not submit an insurance claim for UM coverage for any physical injury, and he does not claim in this case that he is owed any UM benefit under the policy.

Hatch sought medical treatment on the day of the accident in a hospital emergency room, and she received a diagnosis of lumbar strain and low back pain.   She subsequently received accident-related medical treatment from several health care providers through approximately May 2014.   Hatch had previously injured her back in an automobile accident in 2010, and her treatment for that injury included back surgery in 2011.   After the February 2014 accident, Hatch was evaluated in April 2014 by the physician who had performed her 2011 back surgery.   The surgeon concluded Hatch did not require further surgical intervention at that time.

In 2015, Hatch inquired through counsel regarding UM coverage under Henning's policy, and Defendant responded by providing a copy of a signed UM rejection form bearing Henning's name.   When consulted by the attorney, Henning asserted that the signature on the form was not his and the document was a forgery.   On May 13, 2015, Hatch's attorney submitted to Defendant several documents bearing Henning's actual signature to permit a comparison.   Defendant responded by agreeing that the signatures

4

did not match and that it would allow UM coverage for the February 2014 accident. Henning testified during his deposition that he knew immediately the UM rejection form was not genuine and that he never believed he had rejected UM coverage for the insured vehicle.    Hatch also testified that she did not believe Henning had signed the UM rejection form.    Neither of them has any evidence regarding who signed Henning's name on the form, but they infer that someone associated with Defendant was responsible because the forged document was in Defendant's custody and Defendant produced it in response to Hatch's UM claim.

On June 9, 2015, Hatch's attorney requested payment of UM coverage benefits in the amount of the policy limit; he included a list of medical bills incurred with six health care providers in the total amount of $14,850.34.    Defendant responded that the value of Hatch's claim was within the liability coverage limit of $25,000 under Preslar's policy and thus no UM payment was due at that time.    Defendant subsequently assigned Hatch's UM claim to an adjuster who reevaluated the claim and determined that Hatch may have aggravated a preexisting back injury in the February 2014 accident.    The adjuster valued Hatch's injury claim at $27,318.34 based on medical bills of $15,318.34 and pain and suffering of $12,000.    On February 23, 2016, Defendant communicated to Hatch's counsel an offer to pay $25,000 as the liability coverage limit under Preslar's policy and $2,318.34 in UM coverage under Henning's policy.

Hatch did not respond.    On February 6, 2016, she had filed a lawsuit (joined by Henning) against Preslar and Defendant in state court.    *See Hatch v. Preslar*, Case No. CJ-2016-664 (Okla. Cty., Okla. Feb. 5, 2016) (case record publicly available at https://

www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CJ-2016-664).

Following a dismissal of that case, Plaintiffs filed this action on May 24, 2019, based on

federal diversity jurisdiction.[2]   At some point during the litigation, Hatch provided a list

of medical bills and records of treatment received through September 2017.   Plaintiffs'

counsel provided a complete copy of Hatch's medical bills and records to Defendant's

counsel in this case on February 6, 2020.

### Discussion

### A.   Breach of Contract

Defendant asserts that neither Henning nor Hatch can show a breach of the policy

terms.   Defendant contends Henning did not suffer any bodily injuries in the accident,

never submitted a claim for UM coverage, and did not have a covered loss under the

policy.[3]   As to Hatch, Defendant contends she did not submit, in a timely manner, factual

support for a loss in excess of the amount that Defendant offered to pay for UM coverage.

Under Oklahoma law, Plaintiffs must establish the following essential elements to

prevail on the breach of contract claim asserted in the Complaint:   a contract existed; the

contract required UM coverage benefits to be paid; and Defendant breached the contract,

and caused damages, by failing to make the payment.   *See Digital Design Grp., Inc. v.*

*Info. Builders, Inc*., 24 P.3d 834, 843 (Okla. 2001) ("In order to recover on its breach of

---

[2]   The first case was dismissed on May 30, 2018, and refiled within the one-year period of Oklahoma's savings statute, Okla. Stat. tit. 12, § 100.   *See* Compl. ¶¶ 30-31.   Other than omitting Preslar as a defendant, the Complaint in this case is identical to an amended pleading filed in state court in May 2017.   *Compare* Pl.'s Resp. Br., Ex. 10 [Doc. No. 26-10], First Am. Pet. ¶¶ 1-26 *with* Compl. ¶¶ 8-28, 32-36.

[3]   Property damage to Hennings' vehicle was covered under Preslar's policy.

contract theory, [plaintiff] needed to prove: 1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach."); *accord Cates v. Integris Health, Inc.*, 412 P.3d 98, 103 (Okla.), *cert. denied*, 138 S. Ct. 2659 (2018).

### 1.    Henning's Claim

Plaintiffs claim a right to payment under the UM coverage provision of Henning's policy.   The provision obligates Defendant to "pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle."   *See* Def.'s Mot. Summ. J., Ex. 6 [Doc. No. 21-6], Policy at 13 (emphasis omitted).   The provision expressly provides:   "The bodily injury must be: 1. sustained by an insured; and 2. caused by an accident that involves the operation, maintenance or use of an uninsured motor vehicle as a motor vehicle."   *Id.*   The policy defines an uninsured motor vehicle to include an underinsured vehicle, that is, one insured for bodily injury liability but the limits "are less than the amount of the claim of the person or persons making [a] claim."   *See id.*

It is undisputed that Henning sustained no bodily injury from the February 2014 accident.   He did not make a claim for UM coverage, that is, damages for bodily injury that he was entitled to recover from Preslar.   Because Defendant did not breach a contractual obligation to Henning, Defendant is entitled to summary judgment on Henning's breach of contract claim.

### 2.    Hatch's Claim

In contrast, Hatch did suffer bodily injury caused by the February 2014 accident and submitted a claim for UM coverage.   Defendant does not dispute that Hatch was legally

entitled to recover damages from Preslar for her injuries or that his vehicle was uninsured/underinsured for purposes of the UM coverage provision.   Instead, Defendant argues that "Hatch has not demonstrated that she is entitled to UM benefits beyond what [Defendant] has offered" and her right to payment is conditioned on a timely submission of her medical bills.   *See* Def.'s Mot. Summ. J. at 27.   Defendant relies on a policy provision that obligates a person making a claim for UM coverage to provide timely notice of the claim and "all the details about the death, injury, treatment, and other information that [Defendant] may need as soon as reasonably possible after the injured insured is first examined or treated for the injury."   *See id.* (quoting Policy at 24-25) (emphasis omitted).

Upon consideration, the Court finds that a genuine dispute of material fact prevents summary judgment on Hatch's breach of contract claim.   Defendant recognizes that the question of whether Hatch was paid (or offered to be paid) the full amount due under the UM coverage provision is a contested issue.   Defendant instead seems to assert that an implied or contractual duty of Hatch to provide timely notice or cooperate in adjusting the claim bars her recovery.

Under Oklahoma law, "[a]n insured . . . has an obligation to cooperate with the insurer, which is both contractual and implied in law." *First Bank of Turley v. Fid. & Deposit Ins. Co.*, 928 P.2d 298, 304 (Okla. 1996) (footnote omitted).   However, an insured's failure to cooperate is an affirmative defense in a breach of contract action against the insurer for payment due under the policy.   *See id.* at 304 n.21; *see also O'Neill v. Long*, 54 P.3d 109, 116 n. 11 (Okla. 2002); *State Farm Mut. Auto. Ins. Co. v. Koval*, 146 F.2d 118, 120 (10th Cir. 1944) ("such a breach [of a cooperation clause] is an affirmative

defense, the burden of establishing which rests on the insurer").   "What constitutes lack of cooperation is a question of fact."   *Iowa Home Mut. Cas. Co. v. Fulkerson*, 255 F.2d 242, 245 (10th Cir. 1958); *see Koval*, 146 F.2d at 120.

Upon consideration of the facts shown by the summary judgment record, the Court finds that Defendant has not shown it is entitled to judgment as a matter of law on Hatch's breach of contract claim.   Therefore, summary judgment is inappropriate on this claim.

## B.    Insurer's Bad Faith

Defendant asserts that Henning cannot establish any essential elements of a bad faith claim, and that Hatch's claim fails because there was a legitimate dispute regarding the value of her UM claim and Defendant acted reasonably in adjusting the claim based on the information available to it when making a decision.

### 1.    Henning's Claim

To establish a breach of Defendant's duty of good faith and fair dealing with its insured, Henning must show that Defendant breached the insurance contract and, in so doing, acted in a manner constituting bad faith.   *See Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 724 (2009) (essential element of bad faith claim for nonpayment of first-party coverage is "the claimant was entitled to coverage under the insurance policy"); *see also Brown v. Patel*, 157 P.3d 117, 121 (Okla. 2007); *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (per curiam).   According to the Oklahoma Supreme Court, "a determination of liability under the contract is a prerequisite to a recovery for bad faith breach of the insurance contract."   *Davis v. GHS Health Maint. Org., Inc.*, 22 P.3d 1204, 1210 (Okla. 2001); *see Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1249 (10th Cir.

2010) (where court finds an insurer did not breach the insurance contract by denying coverage, it necessarily follows that insurer's denial of coverage was not unreasonable) (applying Oklahoma law).

In this case, Henning had no right to UM benefits under the policy based on Hatch's February 2014 accident, and Defendant did not breach the policy by failing to make a UM payment to Henning.   Thus, Defendant could not have acted unreasonably and in bad faith toward Henning where it had no liability to him under the policy.   Henning does not recognize or address this flaw in his bad faith claim but, instead, argues that Defendant's conduct in "forging UM Waivers and then relying on the UM Waiver to deny a UM claim" constitutes bad faith conduct.   *See* Pls.' Resp. Br. at 12.   This argument is unsupported by any presentation of facts or citation to the record.   It is contrary to the undisputed facts that Defendant did not deny any UM claim by Henning and, when responding to a possible claim by Hatch, accepted Hennings' assertion that the signature on the UM form was not genuine and that he did not reject UM coverage on the insured vehicle.

The tort of insurer's bad faith serves to protect the insured's right to compensation for a covered loss.   *See Christian v. Amer. Home Assur. Co*., 577 P.2d 899, 904-05 (Okla. 1977).   Any misconduct by Defendant or its agent with regard to a false waiver of UM coverage did not injure Henning, who did not suffer a denial or delay in payment of a UM claim.[4]   Thus, the Court finds that Henning's bad faith claim fails as a matter of law.

---

[4]   Henning argues that Defendant's bad faith conduct consists of its "use of a forged UM waiver to deny Hatch's claim" and this conduct "caused Henning to suffer mental pain and suffering" in a loss of trust in his insurer.   *See* Pls.' Resp. Br. at 10.   Henning provides no legal authority for the proposition that he can sue Defendant for allegedly mishandling another insured's claim.

Therefore, Defendant is entitled to summary judgment on Henning's bad faith claim.

### 2.    Hatch's Claim

Defendant contends Hatch cannot prevail on her bad faith claim because the undisputed facts show there was a legitimate dispute regarding the value of her UM claim. Defendant also contends it acted reasonably in valuing Hatch's UM claim based on the information that was available to it when she requested a payment of UM benefits, which did not include the information later provided by her litigation attorneys concerning medical treatment received in 2016 and 2017.

Hatch claims Defendant engaged in bad faith by failing to make a reasonable evaluation and adjustment of her UM claim, resulting in a denial of contractual benefits. Hatch argues that Defendant recognized she was a potential "eggshell" plaintiff but ignored this possibility in valuing her claim.   *See* Pls.' Resp. Br. at 14-15.   Hatch admits she was involved in other motor vehicle accidents after February 2014 – according to her deposition testimony, in March 2015 and 2017 – in which she also hurt her neck and back.   *See id*. at 15; Hatch 2/4/20 Dep. [Doc. No. 26-17], 13:4-11, 14:4-25; Hatch 8/10/17 Dep. [Doc. Nos. 21-1 and 26-18], 49:10-24, 50:24-51:9.   But Hatch contends "her neck and back issues were present before the 2014 accident and continued to worsen for years after." *See* Pls.' Resp. Br. at 14.   She also contends Defendant acted in bad faith by relying on a forged UM waiver to deny her claim.   *Id.* at 19.

Under Oklahoma law, Defendant "has an implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received."   *Badillo*,

121 P.3d at 1093 (quoting *Christian*, 577 P.2d at 901); *accord Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000).   "[A]n insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute" is well established.   *Gov't Emp. Ins. Co. v. Quine*, 264 P.3d 1245, 1249 (Okla. 2011); *accord Ball*, 221 P.3d at 725; *Brown*, 157 P.3d at 126-27; *Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000); *see Shotts v. GEICO Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019) (viewing first step in bad faith analysis as determining whether there is legitimate dispute regarding coverage or value of a claim). "However, when presented with a claim by its insured, an insurer must conduct an investigation reasonably appropriate under the circumstances and the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient."   *Newport*, 11 P.3d at 195 (internal quotation omitted); *see Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1127-28 (10th Cir. 2012); *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991).   "If there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [an] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case."   *Newport*, 11 P.3d at 195 (quoting *McCorkle v. Great Atl. Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981)); *accord Badillo*, 121 P.3d at 1093.

In this case, Hatch challenges the reasonableness of Defendant's conduct in two respects.   The Court finds no inference of bad faith, however, related to the alleged false waiver of UM coverage.   Hatch does not claim Defendant forged Henning's signature or was involved in obtaining a false waiver, nor does she show that the waiver had an adverse

effect on her UM claim.   The undisputed facts show that Defendant promptly investigated Henning's claim of a forged signature and conceded the invalidity of the waiver of UM coverage.   Defendant did not deny Hatch's UM claim for lack of coverage but, instead, added UM coverage to the policy from its inception, even though the record shows Henning had not paid for UM coverage.   *See* Pls.' Resp. Br., Ex. 1 [Doc. No. 26-1], Decl. Page, and Ex. 8 [Doc. No. 26-8] at 3 (ECF page numbering) (email approval of recommendation to add UM coverage effective June 28, 2013, due to "distinctly different signatures" on UM form and other documents).   Defendant agreed that UM coverage should be provided under the circumstances.

Turning to the valuation of Hatch's UM claim, Defendant presents undisputed facts showing that it valued Hatch's claim within the $25,000 limit of liability coverage under Preslar's policy in June 2015 when she first provided medical records and requested payment; Defendant then re-evaluated the claim to take into account Hatch's preexisting neck and back conditions and offered to pay $2,318.34 for her UM claim (above the $25,000 limit of Preslar's policy, or a total of $27,318.34) in February 2016.   Hatch responds by arguing that Defendant's valuation was unreasonably low and "ignored the facts of the claim" because she had "over $160,000 in medical expenses."   *See* Pls.' Resp. Br. at 14.   Hatch contends Defendant did not consider unspecified "injures related to the 2014 accident" and "apparently did not consider all of her medical expenses" due to the disparity between $160,000 in medical bills and a valuation of less than $28,000.   *Id*. at 16-17.   Hatch ignores the fact that she had only incurred $15,000 in medical expenses allegedly related to the 2014 accident at the time of her claim.   The $160,000 figure is

13

largely based on medical expenses incurred in 2016 and 2017.   *See* Def.'s Mot., Ex. 3 [Doc. No. 21-3]; Pls.' Resp. Br., Ex. 19 [Doc. No. 26-19].[5]

"The critical question in a bad faith tort claim is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding or delaying payment under the policy."   *Ball*, 221 P.3d at 725 (quoting *Newport*, 11 P.3d at 195).   "The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim."   *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991); *accord Newport*, 11 P.3d at 195.   In discussing timeliness provisions of the Oklahoma Insurance Code, the Oklahoma Supreme Court recently observed:   "Relatedly, in the bad-faith context, we have clarified that the timeframe for judging the reasonableness of an insurer's actions is that initial window in which the insurer makes the decision to pay or deny the claim."   *Hamilton v. Northfield Ins. Co.*, 2020 OK 28, ¶ 15, 2020 WL 2140459, *5 (Okla. May 5, 2020) (to be published).

Upon consideration of the summary judgment record viewed in the light most favorable to Hatch as required by Rule 56, the Court finds that Hatch has failed to demonstrate a genuine dispute of material facts regarding her claim of bad faith conduct. Hatch does not contend Defendant failed to conduct a timely investigation of her UM claim.   She has failed to present minimally sufficient facts from which reasonable jurors

---

[5]   In opposing Defendant's statement of undisputed facts, Hatch blurs the timing issue by stating:   "After State Farm offered $2,318.34, Hatch, acting through her attorneys of record, sent her medical bills on May 11, 2015, and February 6, 2020."   *See* Pls.' Resp. Br. at 5, ¶ 27 (citing exhibits).   The summary judgment record contains no letter dated May 11, 2015, but in any event, Defendant made its $2,318,34 offer in February 2016.   The second date (February 6, 2020) is the date on which Hatch's medical bills and records were provided to defense counsel in this case.

could find that Defendant did not make a timely assessment of her UM claim based on the information that was available at the time of its decision.    Defendant determined the value of the claim based on medical bills of approximately $15,000.    The higher valuation now advocated by Hatch is based on medical bills that were incurred later or, at least, medical bills that were provided during the litigation.    Defendant cannot be faulted for failing to value Hatch's UM claim based on information that was not available at the time Hatch requested payment of UM coverage.

Therefore, because Hatch has failed to demonstrate a genuine dispute of material fact regarding her bad faith claim, Defendant is entitled summary judgment on this claim.

## C.    Fraud

In the Complaint, Plaintiffs assert a claim of actual fraud – that Defendant made a false representation of fact by presenting a UM rejection form purportedly signed by Henning, that Defendant made the misrepresentation knowingly or recklessly with the intention that Plaintiffs would rely on it, that Plaintiffs did actually rely on it, and that they suffered damages as a result.    *See* Compl. ¶¶ 21-28; *see also Varn v. Maloney*, 516 P.2d 1328, 1332 (Okla. 1973) (stating elements of actual fraud).    Defendant seeks summary judgment on the ground that Plaintiffs cannot establish several essential elements of this claim, namely, neither of them actually believed the alleged false representation, relied on it to their detriment, or suffered any resulting damages.

In resisting summary judgment, Plaintiffs alter their fraud theory; they argue that Defendant's conduct in presenting a false UM waiver "amounts to constructive fraud." *See* Pls.' Resp. Br. at 13.    Assuming, without deciding, that Plaintiffs can change their

theory of fraud liability at this point in the case, the Court finds that Plaintiffs' new claim also fails on the undisputed facts shown by the record.

Plaintiffs' legal theory is not entirely clear.[6]   They rely on a statutory definition of constructive fraud – "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault . . . by misleading another to his prejudice," Okla. Stat. tit. 15, § 59(1) – and case law regarding criminal forgery.   *See* Pls.' Resp. Br. at 13-14 (quoting *Hurley v. State*, 416 P.2d 967, 971 (Okla. Crim. App. 1966)).[7]   According to the Oklahoma Supreme Court, however, "[t]o be actionable, both actual fraud and constructive fraud require detrimental reliance by the person complaining."   *Howell v. Texaco Inc*., 112 P.3d 1154, 1161 (Okla. 2004) (citation omitted).   Henning admits that he was not misled by the false document and did not rely on it.   *See* Pls.' Resp. Br. at 14.   Although

---

[6]   Under Oklahoma law, a claim of constructive fraud is typically based on a fraudulent nondisclosure or concealment, and consists of the following elements:

(1)   That the defendant owed plaintiff a duty of full disclosure . . . ;

(2)   That the defendant misstated a fact or failed to disclose a fact to plaintiff;

(3)   That the defendant's misstatement or omission was material;

(4)   That plaintiff relied on defendant's material misstatement or omission; and

(5)   That plaintiff suffered damages as a result of defendant's material misstatement or omission.

*Specialty Beverages, L.L.C. v. Pabst Brewing Co*., 537 F.3d 1165, 1180-81 (10th Cir. 2008) (internal quotation omitted).

[7]   In addition to the statutory definition, Plaintiffs rely on the case of an injured railroad worker who was induced by his employer to sign a waiver of his right to compensation under federal law; the court found sufficient facts from which "constructive fraud may be present" and invalidated the waiver.   *See Faulkenberry v. Kans. City S. Ry. Co*., 602 P.2d 203, 206-08 (1979). The case is distinguishable and offers no apparent support for Plaintiffs' fraud claim.

Plaintiffs do not separately address Hatch's fraud claim, the same flaw exists.   Hatch was not misled by the forged UM waiver and did not rely on it to her detriment.

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiffs' claims of fraud.

### Conclusion

For these reasons, the Court finds that a genuine dispute of material fact precludes a judgment in Defendant's favor as a matter of law on Hatch's breach of contract claim but that Defendant is entitled to summary judgment on Henning's contract claim, and all claims of insurer's bad faith, fraud, and negligence.

IT IS THEREFORE ORDERED that Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [Doc. No. 21] is GRANTED in part and DENIED in part, as set forth herein.   The case shall proceed only on Plaintiff Hatch's breach of contract claim.

IT IS FURTHER ORDERED that pursuant to the Orders of February 28, 2020 [Doc. No. 23] and July 28, 2020 [Doc. No. 29], the deadline to complete discovery is 30 days from the date of this Order, all trial submissions are due within 60 days, and the deadline to complete mediation is 30 days from this date.

IT IS SO ORDERED this 21st day of October, 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge